I6QAANTPps

```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

UNITED STATES OF AMERICA,

          v.                              18-cr-0101 (PAC)

CASEY MICHAEL ANTONE,

               Defendant.

------------------------------x
                                          New York, N.Y.
                                          June 26, 2018
                                          11:40 a.m.

Before:

               HON. PAUL A. CROTTY

                                     District Judge


                    APPEARANCES

GEOFFREY S. BERMAN
     United States Attorney for the
     Southern District of New York
BY:  RYAN FINKEL, ESQ.
     Assistant United States Attorneys

NICHOLAS GOODMAN & ASSOCIATES, PLLC
     Attorneys for Defendant
BY:  CAMILLE M. ABATE, ESQ.


Also Present:  Andrew Wingens
               Intern, U.S. Attorney's Office
```

Case 1:18-cr-00101-PAC   Document 13   Filed 07/23/18   Page 2 of 14   2
I6QAANTPps

1               (Case called)
2               THE CLERK:  Counsel for the government, please state
3       your appearance.
4               MR. FINKEL:  Good morning, your Honor.  Ryan Finkel
5       for the government.  With me at counsel table, with your
6       Honor's permission, is Andrew Wingens, who is an intern with
7       our office.
8               THE COURT:  OK.  He is most welcome.  Thank you,
9       Mr. Finkel.
10              MS. ABATE:  Good morning.  Camille Abate for
11      Mr. Antone, and Mr. Antone is seated to my left.
12              THE COURT:  Ms. Abate and Mr. Antone, how are you?
13              THE DEFENDANT:  Fine, your Honor.  Thank you.
14              THE COURT:  The purpose today is to take Mr. Antone's
15      plea?
16              MS. ABATE:  That is correct, your Honor.
17              THE COURT:  You have explained the procedures to him?
18              MS. ABATE:  I have.
19              THE COURT:  David, would you swear Mr. Antone.
20              (Defendant sworn)
21              THE COURT:  Please sit down, Mr. Antone.
22              I want to remind you now, Mr. Antone, that you are
23      under oath.  You have to answer truthfully the questions that I
24      put to you.  If you answer falsely, your answers can be used
25      against you in another prosecution for perjury or making a

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

1  false statement. If I ask you anything you don't understand,
2  you can turn to your lawyer, Ms. Abate, to help clarify for us.
3  All right?
4      THE DEFENDANT: Yes, your Honor.
5      THE COURT: Mr. Antone, would you state your name for
6  the record and give us your date of birth.
7      THE DEFENDANT: Casey Michael Antone, October 28,
8  1972.
9      THE COURT: And where were you born?
10     THE DEFENDANT: Detroit, Michigan.
11     THE COURT: You are a citizen of the United States?
12     THE DEFENDANT: I am.
13     THE COURT: How far did you get in school?
14     THE DEFENDANT: I graduated college.
15     THE COURT: And have you worked?
16     THE DEFENDANT: I have worked, over the years, yes.
17     THE COURT: What did you do?
18     THE DEFENDANT: I worked in my family's businesses,
19 which were supermarket, and cellular phone cars.
20     THE COURT: Are you currently under the care of a
21 physician or psychiatrist for any mental or emotional problems?
22     THE DEFENDANT: No, I'm not.
23     THE COURT: Are you addicted to narcotics?
24     THE DEFENDANT: No, I'm not.
25     THE COURT: Have you had any drugs, medicine or pills,

1  or alcoholic beverages in the last 24 hours?
2           THE DEFENDANT:  No.
3           THE COURT:  Is your mind clear?
4           THE DEFENDANT:  It is.
5           THE COURT:  Do you know what you're doing?
6           THE DEFENDANT:  I do.
7           THE COURT:  Do you recognize Ms. Abate as your
8  attorney?
9           THE DEFENDANT:  I do.
10          THE COURT:  Has she given you a copy of the charging
11 instrument?
12          THE DEFENDANT:  She has.
13          THE COURT:  Do you understand what you're being
14 charged with?
15          THE DEFENDANT:  I do.
16          THE COURT:  And has Ms. Abate explained to you the
17 consequences of pleading guilty?
18          THE DEFENDANT:  Yes, she has.
19          THE COURT:  Are you satisfied with Ms. Abate's advice
20 and counsel and representation that she's given to you?
21          THE DEFENDANT:  I am.
22          THE COURT:  Now, Mr. Antone, you're giving up valuable
23 rights.  Before I accept your plea of guilty, I have to review
24 those rights with you.  Do you understand that you have the
25 right to plead not guilty and to persist in that plea?

1             THE DEFENDANT:  Yes.
2             THE COURT:  You don't have to plead guilty.  You
3    understand?
4             THE DEFENDANT:  I do.
5             THE COURT:  The last time we were together you said
6    you wanted to make motions.  You're giving up your right to
7    make motions as well.  Do you understand?
8             THE DEFENDANT:  Yes.
9             THE COURT:  You have a right to trial by a jury of 12
10   people.  At trial you would be presumed innocent.  The
11   government would have to prove your guilt beyond a reasonable
12   doubt and a jury of 12 would have to be unanimous.  Do you
13   understand?
14            THE DEFENDANT:  Yes.
15            THE COURT:  You have the right to the assistance of
16   counsel -- that's Ms. Abate -- for your defense.  And if
17   necessary the Court will appoint counsel at trial and at every
18   other stage of the proceedings.  Do you understand?
19            THE DEFENDANT:  Yes.
20            THE COURT:  You have a right to see and hear all the
21   witnesses and have Ms. Abate cross-examine them in your
22   defense, and she can object to the government's evidence.  Do
23   you understand?
24            THE DEFENDANT:  Yes.
25            THE COURT:  You have the right to testify and present

I6QAANTPps

1   evidence and to the issuance of subpoenas or compulsory process
2   to compel the attendance of witnesses to testify in your
3   defense.  Do you understand?
4            THE DEFENDANT:  Yes.
5            THE COURT:  And if you decide not to testify or put on
6   any evidence, the jury could not be informed of that, and I
7   would instruct them that the fact that you did not testify or
8   put on any evidence could not be used against you.  Do you
9   understand?
10           THE DEFENDANT:  Yes.
11           THE COURT:  By entering a plea of guilty, if I accept
12  that plea, there will be no trial, you will have waived or
13  given up your rights to a trial as well as those rights
14  associated with the trial that I've just described to you.  Do
15  you understand?
16           THE DEFENDANT:  Yes.
17           THE COURT:  By pleading guilty, Mr. Antone, I'll be
18  able to sentence you just as if a jury had returned a guilty
19  verdict after a full trial on the merits.  Do you understand?
20           THE DEFENDANT:  Yes.
21           THE COURT:  Would you mark as Court Exhibit 1 a letter
22  addressed to Ms. Abate dated June 18, 2018.
23           You've seen this letter before, Mr. Antone, haven't
24  you?
25           THE DEFENDANT:  I have, yes.

1      THE COURT:  Is that your signature on the last page?
2      THE DEFENDANT:  It is.
3      THE COURT:  Does this represent the entire agreement
4  that you have with the government?
5      THE DEFENDANT:  It does.
6      THE COURT:  It didn't leave anything out?
7      THE DEFENDANT:  No.
8      THE COURT:  Did you sign it voluntarily?
9      THE DEFENDANT:  Yes.
10     THE COURT:  Did anybody make any threats or promises
11 to get you to sign?
12     THE DEFENDANT:  No.
13     THE COURT:  Now turn to page 1.  You are charged in
14 the four-count indictment with various conspiracies, wire
15 frauds, and fraudulent use of credit cards.  You're pleading
16 guilty to Count One, which charges you with fraudulently
17 obtaining an American Express credit card from January 2015
18 through February of 2018 and using that for an illicit purpose.
19 This carries a maximum term of imprisonment of 7.5 years, a
20 maximum term of supervised release of three years, a maximum
21 fine of the greatest of $250,000, twice the gross pecuniary
22 gain derived from the offense, or twice the loss to someone
23 other than yourself, and a $100 mandatory special assessment.
24 Do you understand that those are the maximums that can be
25 imposed on you?

1           THE DEFENDANT:  Yes, I do.
2           THE COURT:  And if you violate the terms of your
3  supervised release, you can be given further time in jail.  Do
4  you understand?
5           THE DEFENDANT:  Yes.
6           THE COURT:  Now, you are also pleading guilty to the
7  forfeiture allegations of Count One.  Do you understand that?
8           THE DEFENDANT:  I do, yes.
9           THE COURT:  And you're agreeing to make restitution in
10  the amount of $207,006.34.  Do you see that?
11          THE DEFENDANT:  Yes, I do.
12          THE COURT:  Did you review with Ms. Abate the
13  calculation of the offense level?
14          THE DEFENDANT:  I did, yes.
15          THE COURT:  And you understand your criminal history
16  category is zero, so that the guideline range is an offense
17  level of 19 and a criminal history category of I, resulting in
18  a guideline range of 30 to 37 months' imprisonment.  Do you
19  understand?
20          THE DEFENDANT:  Yes.
21          THE COURT:  On page 4, Mr. Antone, neither the
22  Probation Office nor the Court is bound by the guidelines
23  stipulation, either as to questions of fact or questions of
24  law.  And I'm not going to make any determination about what
25  guidelines I'm going to impose until I see the Probation

Case 1:18-cr-00101-PAC   Document 13   Filed 07/23/18   Page 9 of 14   9
I6QAANTPps

1    Office's report.  Do you understand that?

2             THE DEFENDANT:  Yes.

3             THE COURT:  Mr. Antone, do you understand that I have
4    complete discretion on in matter and can sentence you anywhere
5    from zero to the maximum allowed by the statute?

6             THE DEFENDANT:  Yes.

7             THE COURT:  And the guideline is not binding on the
8    Court.

9             THE DEFENDANT:  I understand.

10            THE COURT:  In addition to pleading guilty and waiving
11   your right to trial, Mr. Antone, you're also agreeing not to
12   appeal or collaterally attack the sentence if you are sentenced
13   within the guideline range of 30 to 37 months.  Do you
14   understand that?

15            THE DEFENDANT:  Yes.

16            THE COURT:  At page 5, Mr. Antone, it says you're
17   acknowledging that you're accepting this agreement, you have
18   decided to plea guilty because you are in fact guilty.  Is that
19   a true statement?

20            THE DEFENDANT:  Yes, it is.

21            THE COURT:  Mr. Finkel, the next paragraph deals with
22   whether or not Mr. Antone is a citizen.  Do you have any doubt
23   that he is a citizen of the United States?

24            MR. FINKEL:  I don't, your Honor, but it's become the
25   practice of the office to make sure that all individuals who

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

1  plead guilty pursuant to a plea agreement understand that if
2  they are not a citizen, they face very likely deportation if --
3  when they plead guilty.
4           THE COURT:  Is there anything else about the letter,
5  Mr. Finkel and Ms. Abate, you want to call to Mr. Antone's
6  attention?
7           MS. ABATE:  Not from the defense, your Honor, no.
8           MR. FINKEL:  Nor the government.
9           THE COURT:  All right, Mr. Finkel.  Could you please
10 rise now and tell me what the essential elements are to Count
11 One and what your proof would be to establish these elements
12 beyond a reasonable doubt.
13          MR. FINKEL:  Yes, your Honor.  Count One charges the
14 defendant with violating 18 U.S.C. § 1029(a)(2).  The elements
15 of that charge are: first, the defendant knowingly used and
16 trafficked in the unauthorized access devices for any time
17 during a one-year period; second, by using and trafficking in
18 the unauthorized access devices during that period, the
19 defendant obtained anything of value worth a thousand dollars
20 or more, and things of value, they are valued together totaling
21 a thousand dollars or more during that period; third, the
22 defendant acted with the intent to defraud; and, fourth, the
23 defendant's conduct in some way affected commerce between one
24 state and another state or between a state of the United States
25 and a foreign country.

1    Count One also charges (a)(5) of 18 U.S.C. 1029.  The
2    elements of that charge are: first, with an access device
3    issued to another person, the defendant knowingly effected
4    transactions; second, the defendant obtained through such
5    transactions at any during a one-year period a total of at
6    least $1,000 in payments and any other thing of value; third,
7    the defendant's conduct in some way affected commerce between
8    one state and another state or between a state of the United
9    States and a foreign country.  And, third, Count One of the
10    indictment charges Section (b)(2) of 18 U.S.C. 1029.  And the
11    element of that charge is, whoever is a party to a conspiracy
12    of two or more persons to commit an offense under subsection
13    (a) of this section, if any of those parties engages in any
14    conduct in furtherance of such offense, shall be fined an
15    amount not greater than the amount provided as the maximum fine
16    under subsection (c), and not imprisoned -- or imprisoned not
17    longer than one half the period provided as the maximum
18    imprisonment for such offense under subsection (c).
19    　　　　THE COURT:  And your proof?
20    　　　　MR. FINKEL:  Proof includes, among other things, your
21    Honor, data and records from American Express, Amtrak, eBay,
22    PayPal, Venmo, and MetaBank, showing that the defendant used
23    fraudulently obtained credit cards to make hundreds of
24    thousands of dollars in purchases or attempted purchases
25    online, including more than a thousand dollars in any given

1   one-year period from 2015 to 2018.  It also includes the
2   defendant's postarrest statement, which took place in Amsterdam
3   in approximately 2015, and an e-mail from defendant following
4   his release from custody in which he told American Express that
5   he did not mean anything personal, in sum and substance, did
6   not mean anything personal and would stop committing the fraud.
7           THE COURT:  And venue in the Southern District of New
8   York?
9           MR. FINKEL:  Your Honor, I believe venue would be
10  established, that the wire transmissions traveled and devices
11  were accessed from within this district.  And I believe also
12  that there are Amtrak tickets that were purchased in this
13  district.  Those Amtrak tickets -- excuse me -- let me take
14  that back.  There were Amtrak tickets that were sent to this
15  district which were purchased using the access devices that
16  were fraudulently obtained.
17          THE COURT:  Ms. Abate, you've conducted your own
18  investigation of this matter?
19          MS. ABATE:  I have, your Honor.
20          THE COURT:  Did you know of any reason why Mr. Antone
21  should not plead guilty?
22          MS. ABATE:  No.
23          THE COURT:  Mr. Antone, would you please rise now and
24  tell us in your own words what you did.
25          THE DEFENDANT:  From January 2015 to the day of my

1   arrest in February 2018, I participated with others in
2   conspiring to use without permission corporate American Express
3   account numbers to purchase a variety of goods and services and
4   sell the goods and services to others for cash.  I obtained
5   these Amex account numbers through an algorithm that I
6   discovered pertaining to American Express account numbers.  And
7   I would attempt to purchase goods by buying a variety -- by
8   trying a variety of numbers, combination, until one was
9   accepted.
10          With the approved numbers, I would then purchase items
11  such as Amtrak tickets, hotel accommodations, and airfare and
12  other items, then sell them and keep the proceeds, which were
13  deposited into my PayPal account or transferred to me
14  electronically.  In this matter, I obtained money in excess of
15  $200,000.
16          THE COURT:  Is that adequate for your purpose,
17  Mr. Finkel?
18          MR. FINKEL:  It is, your Honor.
19          THE COURT:  Ms. Abate, is that adequate?
20          MS. ABATE:  I believe so, your Honor, yes.
21          THE COURT:  All right.  It's the finding of the Court
22  in the case of United States v. Casey Antone, 18 Criminal 101,
23  that Mr. Antone is fully competent and capable of entering an
24  informed plea, Mr. Antone is aware of the nature of the charges
25  and the consequences of a plea of guilty, and the plea of

I6QAANTPps

1    guilty is a knowing and voluntary plea supported by an
2    independent basis in fact containing each of the essential
3    elements of the offense.  I therefore accept the plea and
4    adjudge Mr. Antone guilty of Count One of 18 Criminal 101.
5             Is there a date for sentencing?
6             THE CLERK:  Sentencing is set for September 25th at 11
7    a.m.
8             THE COURT:  Is that all right, Mr. Finkel?
9             MR. FINKEL:  Yes, your Honor.
10            THE COURT:  Ms. Abate?
11            MS. ABATE:  That is fine with me, your Honor.
12            THE COURT:  Do you want to be present for the
13   interview?
14            MS. ABATE:  Yes.
15            THE COURT:  OK.  Anything else to do today,
16   Mr. Finkel, Ms. Abate?
17            MR. FINKEL:  Not from the government.  Thank you, your
18   Honor.
19            MS. ABATE:  Not from the defense, your Honor.  Thank
20   you.
21            THE COURT:  Thank you.  Thank you, Mr. Antone.
22            THE DEFENDANT:  Thank you.
23            (Adjourned)
24
25

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300