IAP5antS

```
 1   UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
 2   ------------------------------x

 3   UNITED STATES OF AMERICA,              New York, N.Y.

 4              v.                          18 Cr. 101 (PAC)

 5   CASEY MICHAEL ANTONE,

 6              Defendant.

 7   ------------------------------x

 8                                          October 25, 2018
                                            12:45 p.m.
 9

10   Before:

11                    HON. PAUL A. CROTTY,

12                                          DISTRICT Judge

13

14                    APPEARANCES

15   GEOFFREY S. BERMAN
          United States Attorney for the
16        Southern District of New York
     BY:   BENJAMIN W. SCHRIER
17        JESSICA GREENWOOD
          Assistant United States Attorneys
18
     NICHOLAS, GOODMAN & ASSOCIATES, PLLC
19        Attorneys for Defendant
     BY: CAMILLE M. ABATE
20

21

22

23

24

25
```

IAP5antS

| | |
|---|---|
| 1 | (Case called) |
| 2 | THE DEPUTY CLERK:  Counsel for the government, please |
| 3 | state your appearance. |
| 4 | MR. SCHRIER:  Good afternoon, your Honor.  Benjamin |
| 5 | Schrier and Jessica Greenwood for the government. |
| 6 | THE COURT:  Mr. Schrier, Ms. Greenwood.  Hello. |
| 7 | MS. ABATE:  Good afternoon, your Honor.  For the |
| 8 | defense, Camille Abate, and seated next to me is my client the |
| 9 | defendant, Casey Antone. |
| 10 | THE COURT:  Ms. Abate. |
| 11 | Mr. Antone, how are you doing? |
| 12 | THE DEFENDANT:  I'm okay.  Thank you. |
| 13 | THE COURT:  Has everybody seen the presentence report, |
| 14 | the one that's revised as of September 18, 2018? |
| 15 | MR. SCHRIER:  Yes, your Honor. |
| 16 | MS. ABATE:  Yes, your Honor. |
| 17 | THE COURT:  Any comments you want to make, or |
| 18 | corrections you want to make, Ms. Abate? |
| 19 | MS. ABATE:  Yes.  No, your Honor.  I have no |
| 20 | corrections to it. |
| 21 | THE COURT:  I am going to accept the facts as set |
| 22 | forth in the presentence report as accurate. |
| 23 | The presentence report calculates the guidelines as |
| 24 | follows.  The offense level of 19, criminal history category of |
| 25 | I, resulting in a guideline rage of 30 to 37 months. |

IAP5antS

```
 1              Is that accurate as well, Ms. Abate?

 2         MS. ABATE:  Yes, Judge.

 3         THE COURT:  I am going to accept that as accurate.

 4          Ms. Abate, I have read your submission but I am sure

 5   you want to elaborate on it.

 6         MS. ABATE:  Your Honor, the gravamen of my submission

 7   is to ask the Court, in addition to the details where

 8   Mr. Antone should be released to and recommended a place of

 9   incarceration, the gravamen of my submission is to seek a

10   sentence based on the 3553 factors below the guideline range

11   set out due to certain important information.

12              The first thing is the history and character of the

13   defendant and it was never fully developed either in

14   presentence investigation or before as to why Mr. Antone

15   pursued the type of life he did after he graduated from Elan

16   School.

17              Mr. Antone is an extremely intelligent individual

18   and -- it was not even clear why he was sent to that school but

19   as the Court can see from the submissions, it was basically as

20   one former student said, worse than being a prisoner of war in

21   an enemy territory.  It had a tremendous impact on him and it

22   was an impact that affected his relationship to his family

23   which is acknowledged by Mr. Antone in his letter to be

24   strained, and explains a lot of why he essentially fled his

25   family for so many years.
```

1    I can't speak as a psychologist as to what it did to

2  him but, as I said in my submission, people who go through

3  brutal serious physical and mental abuse do tend to get damaged

4  and lose the ability to empathize with others, they

5  compartmentalize, they protect themselves and I believe that

6  Mr. Antone, the result of this is that Mr. Antone could not

7  have normal personal relationships with people and difficulty

8  relating to authority and, therefore, it is no longer

9  surprising to me that he pursued a life that was nonviolent but

10  that was out of what the society expects people to do.

11    He was young at the time that he started on this road

12  and the road was a road of basically committing theft crimes,

13  money crimes, crimes to make money.  He is not a rich person

14  and I don't think he ever got rich but I think what it speaks

15  to is an ability to deal with people on a day-to-day basis in a

16  working environment.

17    He is now 45 years old.  He has, during the course of

18  this prosecution, done programs in jail.  I have spoken to him

19  at length about the type of choices he made and I know that he

20  has spoken to people in the programs that he has attended in

21  jail about the types of choices he made and I believe, based on

22  all of my knowledge of him at this point, that he will cease to

23  do this kind of theft.

24    I do --

25    THE COURT:  Why do you say that?  Because when he was

IAP5antS

1    thrown out of Europe by the Dutch, he came to the United States

2    and started doing the same thing.  You would think that a man

3    of his intelligence would know I can't get away with this

4    anymore.

5             MS. ABATE:  It doesn't have any -- there is no

6    rational reason I can provide the Court for why he continued

7    here.  The only reason I can see, and it's one of the reasons

8    why I took so much time about the Elan School, is that he was

9    somehow damaged and not understanding intellectually, I think

10   he could understand, but I think emotionally it's one of the

11   reasons why he drank to the point of intoxication during the

12   months before he was arrested.  He was not able to connect with

13   people in a more --

14             THE COURT:  You make much of the point that he didn't

15   rob from individuals, he robbed from corporations.

16             MS. ABATE:  And I think that's --

17             THE COURT:  Not much of a defense in my view, but.

18             MS. ABATE:  Well, it is not a defense, really, it

19   shows that --

20             THE COURT:  Nor is it an explanation or a

21   justification.

22             MS. ABATE:  What I think it is significant for, your

23   Honor, is that he has at least the understanding that

24   individual people were not to be preyed upon.  There are people

25   who are damaged and I am sure the Court has seen many people

1    who have experienced abuse in their childhood who have gone on

2    to prey upon other people.  He has not done that.  I mean, he

3    has done a kind of fantasy, almost it appears to me, that the

4    nature of the crime if you want my personal opinion, is almost

5    like an academic exercise, a mathematical exercise.  You sit

6    there in front of a computer, you don't talk to anybody, you

7    are creating numbers in your head and seeing if you hit, almost

8    like a video game, kind of a mathematical interaction with

9    nobody, and maybe delusions that he is being Robin Hood that he

10   is taking money from American Express but is selling discount

11   tickets to people for travel from Boston to New York or from

12   California to Florida.

13           That's not an excuse and I want to make sure that the

14   Court understands, I'm not saying that it justifies what he did

15   but I think this is the fantasy world that he was living in and

16   that fantasy world is born of the inability, from the time he

17   graduated from Elan School, to really connect in a more

18   meaningful way with human beings.

19           It is kind of sad, actually, that someone would sit in

20   front of a computer for hours upon -- I am talking about hours

21   upon hours upon hours, 20, 30 hours at a time, just playing

22   numbers in their head.  It is sad.  And it is evidence, I

23   think, of what he suffered in his youth.  I'm not asking the

24   Court to sympathize to the point of saying, oh, well.  We will

25   let him go, but I am explaining to the Court that he limited

IAP5antS

damages.  He did not go out on the street with an access device

and take personal people's numbers.  He did not steal a purse

from somebody or steal their valuables or try and invade their

pension funds.  You know, there is no identity theft charge

here.  Ironically, and the facts in the PSR show it, everything

was in his own name.  It was actually very easy for the

government to follow him because his e-mails were Casey Michael

Antone or Antone Casey.  There was always something to do with

his own name.  He didn't steal anybody's identity.  So, does it

make him a saint?  No, it doesn't make him a saint.  Does it

excuse what he did?  It doesn't.  But, the sentencing

guidelines have enhancements for vulnerable victims and for

stealing from pensions and things of that nature, stealing from

more than one vulnerable victim and he does not get any of

those enhancements because that's not what he did.  So, the

sentencing guidelines recognizes that is a more severe type of

crime and he refrained from doing that.

          I do want to say that while there is no predictor of

success in the future, I think that this is the longest period

of incarceration in an actual institution that he has had.  He

was in the federal camp back when he was young that he was sent

to for one crime, but he has never really been incarcerated for

a period of time, as he has here, and as he will be with

whatever sentence the Court chooses to give him on top of the

nine months that he has already done here at MCC as a pretrial

IAP5antS

detainee.  And the effect of having been incarcerated for this
period of time has been to make him use his intelligence and
realize that the way he has been doing is wrong.

I actually think that at some point he thought there
was never going to be any consequences for him for this theft
and now there is and the consequence is that he has been
incarcerated and not able to be in front of a computer and talk
to people who are his friends and to really make himself live
with himself.  And I think the fact that he did productive
things while incarcerated, that he did do two or three programs
that he helped initiate -- reinitiate the tutoring program for
GED which was abandoned because there was not anyone who could
help teach it, I think that speaks to his attempts to try and
make himself into a better person.

Within the things that he did while he was committing
all of these crimes, he was generous to people that he
considered his friends, as the letters show.

THE COURT:  They were very nice letters.

MS. ABATE:  But, so I ask the Court to consider that
the history and characteristics you heavily, heavily influenced
by the abuse he suffered as a 15 or 13 to 18-year-old in high
school in this bizarre, punitive, quasi-military and torture
chamber called Elan School, and I think that that is the
ultimate effect that caused him to take this path and I would
ask the Court to also consider that this is a nonviolent

IAP5antS

```
 1   economic crime and that once American Express is made whole

 2   with the restitution, it's not -- there is no real need to

 3   punish him excessively with incarceration.  The best thing that

 4   could happen to Mr. Antone is that he be made to work for his

 5   money and that he be made to pay this back.

 6           In terms of serving society and deterring future

 7   conduct of this nature, any sentence of incarceration, even a

 8   12-month sentence of incarceration would serve that purpose.  I

 9   think it has already served that purpose, as Mr. Antone, I

10   hope, will tell you.

11           So, not every crime needs an excessive amount of

12   incarceration as punishment.

13           THE COURT:  So, do you have a recommendation?

14           MS. ABATE:  Yes, your Honor.  I would ask that the

15   Court sentence him to a year and a day, essentially, with a

16   halfway house right afterwards for a period of six months.

17           THE COURT:  Now, the government handed up this morning

18   a forfeiture order.  You have signed that, Ms. Abate?

19           MS. ABATE:  Yes.

20           THE COURT:  That means it is appropriate?

21           MS. ABATE:  Yes.

22           THE COURT:  The government is also going to submit an

23   order of restitution in the same amount in, what, 75 days?

24           MS. GREENWOOD:  I believe it is within 90 days, your

25   Honor.
```

IAP5antS

1          MS. ABATE:  What is within 90 days?  I'm sorry.

2          THE COURT:  The order of restitution in the amount of

3     $207,000.

4          MS. ABATE:  He will not be able to start paying it

5     back until after he is released from incarceration but, yes, he

6     is absolutely willing to pay it and suffer forfeiture if he

7     does not pay it back.

8          THE COURT:  Okay, Mr. Schrier, Ms. Greenwood?

9          Mr. Schrier.

10          MR. SCHRIER:  Yes, your Honor.

11          As your Honor now knows from reviewing the

12     government's written submission, the government believes that a

13     guideline sentence would be appropriate in this case primarily

14     for the reasons enunciated in the PSR, the characteristics of

15     the defendant, and the seriousness of the offense.

16     Specifically, however, I did want to address some of the points

17     that defense counsel made in her written submission and also

18     orally.

19          First, your Honor, a point that your Honor asked

20     defense counsel about, the idea that because American Express

21     was the victim, because the victim was a corporate entity, that

22     somehow mitigates the crime, somehow suggests that there are

23     mitigating circumstances at play, and on that note in defense

24     counsel's --

25          THE COURT:  I don't think it is mitigating so much as

IAP5antS

```
1    it could have been worse.

2              MR. SCHRIER:   Certainly, your Honor, but obviously as

3    your Honor knows, committing a fraud against a corporate entity

4    is a very serious offense within the statutory language.  It is

5    also not correct that individuals were somehow not affected by

6    this crime.  For example, we know of at least one traveler who

7    bought an Amtrak voucher through Mr. Antone whose travel plans

8    were disrupted.  He or she was stopped during travel because

9    the travel voucher was fraudulent.  There are also a number of

10   other vendors who are victims in this case, not just American

11   Express, vendors of varying sizes.  And, we also want you to

12   know, your Honor, that in defense counsel's submission, defense

13   counsel argues that the fact that American Express was a victim

14   suggests something about Mr. Antone's moral capacity.  It is

15   the government's position that Mr. Antone targeted corporate

16   accounts because they had fewer security features than personal

17   accounts at times and that they were easier to exploit.  So, we

18   don't believe it is evidence of moral character at all, only

19   evidence of sophistication in perpetrating this fraud.

20             On the point, your Honor, of recidivism and whether a

21   sentence within the guidelines is necessary to ensure that

22   Mr. Antone will not engage in this type of fraud in the future,

23   we note that in the e-mail that Mr. Antone sent to the in-house

24   American Express investigator, he noted that he was essentially

25   being given a second chance when he was deported from the
```

IAP5antS

1   Netherlands where he had been charged with a crime and where he

2   served only 14 days in detention.  He said, I look at this as a

3   gift, Simon, and a new chance in life to start fresh legally

4   for once because now I can.  Almost immediately the defendant

5   began engaging in the exact same type of credit card fraud that

6   he engaged in in the Netherlands.

7           He has previously served time only up to two years.

8   That clearly was not sufficient to deter him from engaging in

9   this type of fraud after those sentences so we believe a

10  guideline sentence is also appropriate for that reason, for

11  deterrence on this particular defendant.

12          Also, your Honor, I wanted to take issue with some of

13  the representations that defense counsel is making regarding

14  the Elan School.  In defense counsel's submission there is

15  significant information provided, mostly from publicly

16  available media sources about the Elan School but there is no

17  evidence in defense counsel's submission, in the defendant's

18  letter or in the PSR tying Mr. Antone specifically to any of

19  the odious practices and abuses at the Elan School.  There

20  hasn't even been a representation by defense counsel that

21  Mr. Antone suffered any trauma as a result of those conditions.

22          The government is not denying that Mr. Antone may have

23  suffered trauma as a result of attending the Elan School but

24  there is simply nothing in the record on which the Court could

25  base a finding that he had and take that into account at

IAP5antS

1     sentencing.  And defense counsel is in the best position to

2     discuss that issue with Mr. Antone, provide specific evidence

3     on that front.

4              Just a couple of other smaller points, your Honor,

5     about some of those?

6              THE COURT:  Yes.

7              MR. SCHRIER:  I apologize your Honor?

8              THE COURT:  I said, yes, go ahead.

9              MR. SCHRIER:  Some of the representations, factual

10    representations that defense counsel made just now, first, the

11    idea that the crimes were easy to track because all of the

12    accounts were in Mr. Antone's name.  That is simply not the

13    case.  Some of the accounts that he used did incorporate

14    elements of his name but others did not, many others did not,

15    and ultimately the government had to use commonality of IP

16    addresses and Google cookies in order to detect all of the

17    instances of the fraud.

18             I also wanted to note, your Honor -- actually, that's

19    it, your Honor.  That's the only other point I wanted to make.

20             Thank you.

21             THE COURT:  Thank you very much.

22             Mr. Antone, this is your opportunity to speak if you

23    wish to do so.  You can remain seated if you are more

24    comfortable.

25             THE DEFENDANT:  Thank you, your Honor.

IAP5antS

1          Thank you.  I have submitted a letter to the Court.

2          THE COURT:  Yes.

3          THE DEFENDANT:  And I would like to apologize once

4  again for my poor choices.  And I didn't write anything today

5  that I was planning to say, I thought I was just going to

6  apologize, but I do want to address at least one thing

7  regarding the Elan School.  I never really spoke to -- I didn't

8  speak to the PSI investigator, Ms. Belgrave about it other than

9  mentioning that I went to the school thinking that I was just

10  mentioning where I went to school at.  And, pretty much the

11  same with Ms. Abate, I didn't go into it too much.

12          My time at the Elan School was a difficult time.  My

13  parents thought they were sending me to a boarding school and

14  just to help me graduate high school because I was hanging out

15  with the wrong crowd and it wasn't really a boarding school.

16  School was just two hours a night every evening and the rest of

17  the day was groups and counseling -- what they would call

18  counseling.  Unlike anything I had ever seen or experienced

19  before.

20          So, it was a very difficult time and I think

21  describing it as difficult is probably a bit generous but it

22  was -- it is nothing I like to talk about, it is nothing I like

23  to think about, and to be honest, I wish it didn't come up in

24  this court proceeding but it did and so I just wanted to

25  address that part of it.

IAP5antS

1          The past nine months have been pretty difficult for

2     me.  When I came back from Europe and I was deported I didn't

3     really have a plan.  I had nowhere to go, really, I didn't

4     really know what I was going to do, and then I stayed involved

5     in the same thing that I was doing until I was arrested.  And I

6     am sitting in MCC for a long time and then transferred to

7     Westchester until today.

8          I have seen a lot also there during that time and I

9     have tried to occupy myself and do the best I could during that

10    time by helping people which was helping myself and, most

11    importantly, I developed what I think is a better support

12    structure for me for when I do get released.  I'm going to be

13    46 years old in just a couple days and I think this is not the

14    life I want for myself and it's not the life that anybody who

15    knows me or loves me wants for me.  My decisions were bad and I

16    could have and should have done a lot better and from this

17    point forward I plan on doing so.

18          Thank you, your Honor.

19          THE COURT:  Thank you very much, Mr. Antone.

20          Anybody else want to be heard?

21          MR. SCHRIER:  No, your Honor.

22          MS. ABATE:  Your Honor, I just want to, I didn't

23    address the details of what I requested.  I just wanted to

24    remind the Court that I am asking that you give credit to

25    Mr. Antone for the 14 days he spent incarcerated in Holland.

IAP5antS

1          THE COURT:  Yes.

2          MS. ABATE:  And as well as recommending --

3          THE COURT:  Albuquerque?

4          MS. ABATE:  Yes.

5          THE COURT:  And supervised in the district of his

6    residence, he intends to reside in Albuquerque.

7          MS. ABATE:  Yes, Judge.

8          THE COURT:  Okay.

9          MS. ABATE:  Thanks.

10         THE COURT:  Well, I have considered the PSR.  I have

11   got the government's submission and I appreciate the

12   government's submission.  I certainly appreciate Ms. Abate's

13   submission and Mr. Antone's letter, as well as the letters of

14   support from friends and family.

15         Just let me tell you what we are doing here.  I am

16   proceeding under 18 U.S.C. 3553 where I have to consider, in

17   imposing the sentence, the nature and characteristics of the

18   offense, the history and characteristics of the defendant.  And

19   certainly, in connection with the characteristics and history

20   of the defendant Mr. Antone, I will consider the school that he

21   attended and the impact that it had on his psychology.  But I

22   also have to consider a sentence that reflects the seriousness

23   of the offense to promote respect for the law and to provide

24   just punishment for the offense, to afford adequate deterrence

25   to criminal conduct, to protect the peoples from further crimes

1    of the defendant, and to provide the defendant with needed

2    educational or vocational training, medical care, or any other

3    correctional treatment in the most effective manner.

4          I have to start with the guidelines and the guidelines

5    here are 19 -- offense level of 19 and Criminal History

6    Category of I, resulting in a guideline sentence of 30 to 37

7    months.  That's the starting point.  I have applied various

8    discounting factors to that because one of the enhancements for

9    the amount of money involved in the crime I think distorts the

10   seriousness of the crime.

11         I don't buy the argument that non-violent economic

12   crimes are to be judged in a manner different than other crimes

13   where you have individual loss.  I think the offense is the

14   theft that occurs and here it occurred.  It also occurred in

15   special circumstances.  Mr. Antone, after he was returned to

16   the United States from Holland, started on the same course of

17   conduct that led to his being asked to leave Holland and being

18   deported from Holland.  So, that's a very serious matter.  Our

19   economic systems depend on honesty and integrity so this is a

20   serious offense to sentence at too low a level and I think

21   Ms. Abate's recommendation would be too low, would not promote

22   respect for the law, but would promote disrespect for the law,

23   would not afford an adequate deterrence, and that as much as

24   Mr. Antone says he is not going to do it again, the fact of the

25   matter is, the crime that brings us together is something he

IAP5antS

1    did again right after he was thrown out of Europe for doing the

2    very same thing.

3            On the other hand, he seems to have tried, he is

4    older, perhaps with the sentence that I am going to impose when

5    he gets out he will be more responsible than has been to date.

6    I am going to impose a sentence of -- I am going to tell you

7    what I am going to impose, Ms. Abate, and then you can object

8    at the end before I impose it.

9            I am going to impose a sentence of 26 months, a term

10   of supervised release of three years.  There will be no

11   probation.  There will be an order of forfeiture in the amount

12   of $207,006.34.  The government has 90 days in which to submit

13   an order of restitution also in the amount of $207,006.34.  I

14   must impose a special assessment of $100 and I am going to do

15   that.

16           The defendant subject to the mandatory conditions and

17   the standard conditions as well, plus the following special

18   conditions:

19           Mr. Antone is to participate in an inpatient treatment

20   program approved by the probation office, which program may

21   include testing to determine whether he has reverted to using

22   drugs or alcohol and he has to contribute to the cost of

23   services rendered based on his ability to pay and the

24   availability of third-party payments.  I authorize the release

25   of available drug treatment evaluations and reports including

IAP5antS

1    the presentence investigation report to the substance abuse

2    treatment provider.

3         Mr. Antone has to provide the probation officer with

4    access to any requested financial information and he can't

5    incur new credit card charges or open additional lines of

6    credit without the approval of the probation office unless he

7    is in compliance with an installment payment schedule.

8         I will recommend that Mr. Antone serve his sentence in

9    a minimum security prison close to the city of Albuquerque, New

10   Mexico, and specifically I guess that's the federal FCI La Tuna

11   in Anthony, Texas.

12        Also, since Mr. Antone intends to live in Albuquerque,

13   I will recommend that his supervision be supervised in the

14   district of his residence which is going to be Albuquerque, New

15   Mexico.  I realize that may change.

16        I have already told you about the restitution.  I have

17   signed the order of forfeiture.  I must impose a special

18   assessment of $100 and I do so.

19        That's the sentence I intend to impose, Ms. Abate.

20   Any objections other than the ones you voiced?

21        MS. ABATE:  Did I hear you say your special conditions

22   are an inpatient treatment program?  Did I hear that correctly?

23        THE COURT:  That's the recommendation in the

24   presentence report, to participate in an inpatient treatment

25   program approved by the probation office.

IAP5antS

1          MS. ABATE:  Your Honor, I am not sure they have

2      inpatient treatment programs for alcoholism.

3          THE COURT:  Drugs or alcohol.

4          MS. ABATE:  Okay.

5          And Mr. Antone would like to do the RDAP program, if

6      it is possible, in the amount of time.

7          THE COURT:  I will make that recommendation as well.

8      I'm not sure whether FCI La Tuna provides RDAP but if it does,

9      I will make the recommendation.

10         MS. ABATE:  Okay, Judge.

11         THE COURT:  I will make the recommendation anyway.

12         MS. ABATE:  Yes, I believe they do.  Thank you.

13         THE COURT:  Does the government have any objections?

14         MR. SCHRIER:  No, your Honor.

15         THE COURT:  Okay.  The sentence is imposed.

16         Mr. Antone, now that I have imposed sentence I have to

17     advise you, you have the right to appeal the sentence, although

18     in the plea agreement you agreed not to appeal any sentence

19     within or below the guideline range of 30 to 37 months and

20     Ms. Abate can advise you on that further.  If you can't forward

21     to pay the costs of appeal you can appeal in forma pauperis.

22     If you so request, my clerk will prepare and file a notice of

23     appeal on your behalf.  The notice of appeal has to be filed

24     within 14 days of the entry of judgment.  Judgment will be

25     entered by close of business today.

IAP5antS

1            Any open counts?

2            MR. SCHRIER:  Yes, your Honor.  There are three open

3  counts on the indictment, 2, 3, and 4.

4            THE COURT:  We will dismiss them.

5            MR. SCHRIER:  The government asks that they be

6  dismissed.

7            THE COURT:  Counts 2, 3 and 4 of the indictment will

8  be dismissed.

9            MS. ABATE:  I'm sorry, your Honor.  14 days credit for

10  Holland, the incarceration there?

11            THE COURT:  I think in imposing the sentence of 26

12  months I took that into consideration.

13            MS. ABATE:  Okay, thank you.

14            THE COURT:  If there is nothing else, thank you very

15  much.

16            MR. SCHRIER:  Thank you, your Honor.

17            MS. ABATE:  Thank you.

18                              o0o

19

20

21

22

23

24

25